UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JERRY D. KING,

                              Plaintiff,

        v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                              Defendant.

NO:  1:15-CV-3072-RMP

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

        BEFORE THE COURT are Plaintiff Jerry D. King's Motion for Summary

Judgment, **ECF No. 14**, and Commissioner of Social Security Carolyn W. Colvin's

Motion for Summary Judgment, **ECF No. 15**. The Court has reviewed the motions,

the reply memorandum (ECF No. 16), the administrative record, and is fully

informed.

## BACKGROUND

        Jerry D. King protectively filed an application for both Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) on August 3, 2012. ECF

No. 9-2 at 21, Tr. 20. In both applications, Mr. King alleged disability beginning

November 1, 2010. *Id.* Mr. King's applications were denied initially on September 28, 2012, and upon reconsideration on December 14, 2012. *Id.* Mr. King requested a hearing, which was held via videoconference before Administrative Law Judge ("ALJ") Glenn G. Meyers on January 14, 2014. *Id.* Mr. King was present and represented by counsel Jeremy D. Wallace. *Id.* The ALJ heard testimony from vocational expert ("VE") Trevor Duncan. *Id.*

The ALJ found that Mr. King had not engaged in substantial gainful work, as defined in 20 C.F.R. §§ 404.1572(a) and 416.920(b), since November 1, 2010. ECF No. 9-2 at 25, Tr. 24. Further, the ALJ found that, for the period from November 1, 2010, through May 31, 2012, Mr. King had the following severe impairment as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c): lumbar spine stenosis. *Id.*

The ALJ found that Mr. King did not have an impairment or combination of impairments from November 1, 2010, through May 31, 2012, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) and 20 C.F.R. Part 416, Subpart I, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). ECF No. 9-2 at 26, Tr. 25. The ALJ further found that Mr. King had the residual functional capacity ("RFC') to "perform light work . . . except he was limited to occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes and scaffolds." ECF No. 9-2 at 26, Tr. 25.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

1    Given Mr. King's age, education, work experience, and RFC, the ALJ found

2   that "the claimant was capable of performing past relevant work as a parts clerk."

3   ECF No. 9-2 at 28, Tr. 27. The ALJ concluded that Mr. King was not under a

4   disability as defined by the Social Security Act from November 1, 2010, through

5   May 31, 2012. ECF No. 9-2 at 29, Tr. 28.

6    Echoing the earlier holding, the ALJ concluded that Mr. King had the

7   following severe impairment from June 1, 2012, through June 1, 2013: lumbar

8   spine stenosis. *Id.* Further, the ALJ found that Mr. King did not have an

9   impairment or combination of impairments from June 1, 2012, through June 1,

10  2013, that met or medically equaled the severity of one of the listed impairments in

11  20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525,

12  and 404.1526) and 20 C.F.R. Part 416, Subpart I, Appendix 1 (20 C.F.R.

13  §§ 416.920(d), 416.925, and 416.926). ECF No. 9-2 at 29, Tr. 28. The ALJ further

14  found that Mr. King had the residual functional capacity ("RFC') to "perform the

15  full range of sedentary work." ECF No. 9-2 at 32, Tr. 31.

16   Given Mr. King's age, education, work experience, and RFC, the ALJ found

17  that "[f]rom June 1, 2012 through June 1, 2013, the claimant was unable to

18  perform any past relevant work." ECF No. 9-2 at 33, Tr. 32. Further, the ALJ

19  determined that "there were no jobs that existed in significant numbers in the

20  national economy that the claimant could have performed." ECF No. 9-2 at 34,

21

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3

Tr. 33. The ALJ concluded that "[t]he claimant was under a disability, as defined by the Social Security Act, from June 1, 2012 through June 1, 2013." *Id.*

However, the ALJ found that "[t]he claimant has not developed any new severe impairment or impairments since June 2, 2013, the date the claimant's disability ended." *Id.* The ALJ concluded that "[m]edical improvement occurred as of June 2, 2013, the date the claimant's disability ended." ECF No. 9-2 at 37, Tr. 36. The ALJ determined that "[a]fter careful consideration of the entire record, I find that, beginning June 2, 2013, the claimant has had the residual functional capacity to perform light work . . . except he is limited to occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes and scaffolds." *Id.*

The ALJ found that "[b]eginning June 2, 2013, the claimant has been capable of performing past relevant work as a parts clerk." ECF No. 9-25 at 39, Tr. 38. As such, the ALJ determined that "[t]he claimant's disability ended June 2, 2013." *Id.* Mr. King's application was granted as to June 1, 2012, through June 1, 2013, on May 16, 2014. ECF No. 9-2 at 39, Tr. 38.

Mr. King filed a request for review by the Appeals Council, which was denied on April 6, 2015. ECF No. 9-2 at 2, Tr. 1. Mr. King then filed a complaint in the District Court for the Eastern District of Washington on May 12, 2015, ECF No. 1, and the Commissioner answered the complaint on August 3, 2015. ECF No. 8. This matter is therefore properly before the Court pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

## STATEMENT OF FACTS

The facts of this case are set forth in the administrative hearing transcripts and record, ECF No. 9. Mr. King was 59 years old when he applied for DIB and SSI and 60 years old at the hearing. *See* ECF No. 9-2 at 21, Tr. 20.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's final decision. 42 U.S.C. § 405(g). A reviewing court must uphold the Commissioner's decision, determined by an ALJ, when the decision is supported by substantial evidence and not based on legal error. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the Commissioner's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986) ("This court must consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's]

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

conclusion."). "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the reviewing court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

Under the Social Security Act (the "Act"),

an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering the claimant's age, education, and work experience, engage in any other substantial

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

"Thus, the definition of disability consists of both medical and vocational

components." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4) and

416.920(a)(4). Step one determines if the claimant is engaged in substantial gainful

activities. If the claimant is engaged in substantial gainful activities, benefits are

denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the ALJ, under

step two, determines whether the claimant has a medically severe impairment or

combination of impairments. If the claimant does not have a severe impairment or

combination of impairments, the disability claim is denied. 20 C.F.R.

§§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).

If the impairment is severe, the evaluation proceeds to step three, which

compares the claimant's impairment to a number of listed impairments

acknowledged by the Commissioner to be so severe as to preclude substantial

gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *see also*

20 C.F.R. §§ 404, Subpt. P, App. 1 and 416, Subpt. I, App. 1. If the impairment

meets or equals one of the listed impairments, the claimant is conclusively

presumed to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

Before proceeding to step four, the claimant's RFC is assessed. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). An individual's RFC is the ability to do physical and mental work activities on a sustained basis despite limitations from any impairments. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to step four, where the ALJ determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

If the claimant cannot perform his previous work, the final step considers whether the claimant is able to perform other work in the national economy in light of his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

At step five, the initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant satisfies this burden by establishing that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1

**ISSUES**

2      Mr. King alleges that the ALJ committed reversible error by (1) improperly

3   rejecting medical evidence; (2) improperly finding that Mr. King's right shoulder

4   impairment and rheumatoid arthritis were not severe impairments at step two; and

5   (3) improperly finding that Mr. King lacked credibility. *See generally* ECF No. 14.

6   Mr. King also asserts that the ALJ failed to discharge his obligation to develop the

7   record. *See id.*

8                                **DISCUSSION**

9   **I.      Rejection of Medical Evidence**

10      Mr. King argues that the ALJ improperly rejected the medical opinion of

11   Dr. Wendy Eider, M.D. ECF No. 14 at 11–14. Relatedly, Mr. King asserts that the

12   ALJ erred by not fully developing the record with respect to Dr. Eider's opinion.

13   *Id.* at 15–16.

14   **A. Legal Standard for Rejecting Medical Opinion Evidence**

15      "[T]he Commissioner must provide 'clear and convincing' reasons for

16   rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*,

17   81 F.3d 821, 830 (9th Cir. 1995). If controverted, "the opinion of an examining

18   doctor . . . can only be rejected for specific and legitimate reasons that are

19   supported by substantial evidence in the record." *Id.* at 830–31. The same analysis

20   applies to the medical opinions of treating physicians. *Id.* at 830. "[I]t is incumbent

21

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Concerning medical opinion evidence, "[t]he ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions . . . falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

### B. Dr. Wendy Eider

#### 1. *Rejection of Medical Opinion*

Dr. Eider opined that "Jerry King has new onset rheumatoid arthritis involving wrists, hands, shoulders and feet. He is on medication but has active disease despite therapy. He is disabled due to his arthritis and is expected to be disabled indefinitely." ECF No. 9-10 at 184, Tr. 879.

The ALJ gave Dr. Eider's opinion "no weight." ECF No. 9-2 at 35. Tr. 34. The ALJ noted that (1) "the medical records in evidence show no objective findings of rheumatoid arthritis affecting the shoulders or feet"; (2) "whether or not the claimant is disabled is an administrative finding and an issue reserved to the Commissioner"; and (3) "at the hearing the claimant testified that his right hand was fine and his ability to handle, finger and feel were all okay. He said there was nothing wrong with his left hand." *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    Mr. King alleges that (1) Dr. Eider's opinion was entitled to greater weight

2    as that of an examining physician; (2) the ALJ impermissibly rejected Dr. Eider's

3    opinion as to disability; and (3) improperly gave greater weight to the opinions of

4    non-examining physicians. ECF No. 14 at 11–14.

5    Mr. King is correct that, absent a contradicting medical opinion, the opinion

6    of an examining physician cannot be disregarded unless the ALJ provides "clear

7    and convincing" reasons. *See Lester*, 81 F.3d at 830. Further, Mr. King accurately

8    notes that examining physicians are generally given greater weight than

9    nonexamining physicians. *See Morgan*, 169 F.3d at 602 ("The opinion of a

10   nonexamining medical advisor cannot by itself constitute substantial evidence that

11   justifies the rejection of the opinion of an examining or treating physician."). The

12   Court, however, finds that the reasons provided by the ALJ are sufficiently "clear

13   and convincing" to justify the ALJ's rejection of Dr. Eider's opinion.

14   First, the ALJ correctly noted that there was no objective medical evidence

15   in the record diagnosing Mr. King with rheumatoid arthritis in the shoulders or

16   feet. While a physician had noted arthritic symptoms in Mr. King's hands, *see* ECF

17   No. 9-10 at 12, Tr. 707–08 (noting that Mr. King was "concerned about swelling

18   on his hands bilaterally" and prescribing "[t]ylenol for arthritis"), Mr. King has not

19   provided any medical evidence supporting a diagnosis of rheumatoid arthritis in

20   the shoulders or feet. As "[t]he ALJ need not accept the opinion of any physician,

21   including a treating physician, if that opinion is brief, conclusory, and inadequately

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 11

1    supported by clinical findings," *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

2    2002), the ALJ did not err in finding that Dr. Eider's single sentence diagnosis was

3    unsupported by the medical record.

4        Second, the ALJ did not err in disregarding Dr. Eider's conclusion regarding

5    disability. A physician "may render opinions on the ultimate issue of disability—

6    the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 726 (9th

7    Cir. 1998). While "[t]he administrative law judge is not bound by the

8    uncontroverted opinions of the claimant's physicians on the ultimate issue of

9    disability . . . he cannot reject them without presenting clear and convincing

10   reasons for doing so." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A

11   physician's "opinion on disability, even if controverted, can be rejected only with

12   specific and legitimate reasons supported by substantial evidence in the record."

13   *Reddick*, 157 F.3d at 726.

14       Under 20 C.F.R. § 404.1527(d)(1), a conclusory statement "by a medical

15   source that [a claimant] is 'disabled' or 'unable to work' does not mean that [the

16   Social Security Administration] will determine that [a claimant is] disabled." 20

17   C.F.R. § 404.1527(d)(1). However, an assessment of a claimant's likelihood of

18   being able to sustain employment is not a conclusory statement as envisioned by

19   § 404.1527(d)(1). *See Hill v. Astrue*, 698 F.3d 1153, 1159–60 (9th Cir. 2012)

20   (finding that the ALJ should have considered physician's opinion that the

21

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

1  claimant's "combination of mental and medical problems makes the likelihood of

2  sustaining full time competitive employment unlikely").

3      Here, Dr. Eider opined that Mr. King "is disabled due to his arthritis and is

4  expected to be disabled indefinitely." ECF No. 9-10 at 184, Tr. 879. Unlike in *Hill*,

5  Dr. Eider's conclusion is not supported by objective medical findings. Instead,

6  Dr. Eider merely offered the conclusory diagnosis that "Jerry King has new onset

7  rheumatoid arthritis involving wrists, hands, shoulders and feet." *Id.* As the ALJ

8  reasonably determined that Dr. Eider's opinion was not based on objective medical

9  evidence in the record, the ALJ permissibly disregarded Dr. Eider's conclusory,

10  unsupported statement as to disability.

11      Third, the ALJ permissibly rejected Dr. Eider's opinion on the basis of

12  Mr. King's testimony. Mr. King testified that his right hand "is fine," he has the

13  ability to "handle, finger, and feel, and grasp" with his right hand, and that there

14  was nothing wrong with his left hand. ECF No. 9-2 at 58, 61, Tr. 57, 60. As "[t]he

15  ALJ is responsible for resolving conflicts in medical testimony," *see Morgan*, 169

16  F.3d at 603, the ALJ did not err in finding that the inconsistency between

17  Dr. Eider's opinion and Mr. King's testimony discredited Dr. Eider's opinion.

18      Mr. King asserts that the ALJ should have given greater weight to Dr.

19  Eider's opinion as she is a "board certified rheumatologist," she "personally

20  examined Mr. King," and "there is no opinion from any doctor disputing the

21  diagnosis." ECF No. 14 at 12. However, an ALJ may permissibly discount the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

uncontroverted opinion of an examining physician if the ALJ provides sufficient "clear and convincing" reasons. *See Lester*, 81 F.3d at 830. As the ALJ provided sufficiently "clear and convincing" reasons for giving "no weight" to Dr. Eider's opinion, the Court finds that the ALJ did not commit reversible error.

### 2. Obligation to Develop Record

Mr. King separately asserts that the ALJ should have further developed the record concerning Dr. Eider's opinion. ECF No. 14 at 12–13, 15–16. Specifically, Mr. King alleges that the ALJ "could have inquired of Dr. Eider as to the basis of her diagnosis, and whether her diagnosis was based upon signs, symptoms, or laboratory findings." *Id.* at 12. Further, "the ALJ could have requested some other doctor's opinion with respect to the legitimacy of the diagnosis." *Id.*

As correctly noted by the Commissioner, it is the claimant's burden to furnish evidence supported his disability claim. ECF No. 15 at 12; *see also* 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."). Although "the ALJ has a special duty to develop the record fully and fairly" it is the claimant's "duty to prove that [he] is disabled." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459–60. An ALJ only has a duty to request more information from a physician

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

where the record is either ambiguous or "inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2010); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.").

As discussed above, the ALJ permissibly gave Dr. Eider's conclusory opinion "no weight." The ALJ, after disregarding Dr. Eider's opinion, found sufficient evidence in the record to make a determination regarding Mr. King's disability claim. *See id.* ("The ALJ, with support in the record, found the evidence adequate to make a determination regarding [claimant's] disability. Accordingly, the ALJ did not have a duty to recontact the doctors."). The ALJ, therefore, did not have a duty to contact Dr. Eider for further information concerning her medical opinion.

## II.    Severe Impairments

Mr. King asserts that the ALJ committed reversible error by failing to consider whether his right shoulder limitation and rheumatoid arthritis constituted severe impairments at step two of the sequential process. ECF No. 14 at 6–11.

A severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Conversely, an impairment is not severe when it is "a slight abnormality (or a combination of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).

**A. Right Shoulder Impairment**

The ALJ found that Mr. King did not have a severe impairment concerning his right shoulder. ECF No. 9-2 at 25–26, Tr. 24–25. The ALJ noted that, while Mr. King complained about right shoulder pain in 2008, 2010, and 2012, x-rays were negative and Mr. King suffered from only a "mildly decreased range of motion." ECF No. 9-2 at 26, Tr. 25. The ALJ concluded that "[t]he evidence does not establish that rotator cuff tendinitis versus right shoulder impingement significantly limited the claimant's functioning for 12 consecutive months and I find he had no severe shoulder impairment." *Id.*

Mr. King submitted additional records to the Appeals Council. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) (noting that the administrative record "includes evidence submitted to and considered by the Appeals Council"). The Appeals Council considered the additional evidence and "found that this information does not provide a basis for changing the [ALJ's] decision." ECF No. 9-2 at 2–3, Tr. 1–2.

Mr. King's additional records noted than an MRI "demonstrates [a] complete full thickness tear over the supraspinatus and infraspinatus with significant retraction just beyond the level of the glenoid." ECF No. 9-10 at 186,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Tr. 881. However, Dr. Jason C. King advised Mr. King to "hold off from surgery." *Id.*

While the ALJ may have erred in not finding Mr. King's right shoulder problem to be a severe impairment at step two, "[a] decision of the ALJ will not be reversed for errors that are harmless." *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). An error is harmless when it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

During the hearing, the ALJ asked the VE the following question: "[a]ssuming a . . . person whose maximum physical capability is light and who can reach to shoulder height, but not higher with the dominant right hand, could a person with those characteristics be a parts clerk?" ECF No. 9-2 at 71, Tr. 70. The VE responded that "there would be some erosion" in the total number of parts clerk jobs in the national economy, "but it would be negligible." ECF No. 9-2 at 71–72, Tr. 70–71. The VE concluded that "I don't see that as being a . . . restriction that would rule out too many of these jobs." ECF No. 9-2 at 72, Tr. 71.

Mr. King, concerning his right shoulder, only complained that he was limited in reaching overhead. *See* ECF No. 9-10 at 186, Tr. 881 ("He continues to have pain with any sort of attempts at overhead lifting. With things at his side it does not really seem to bother him too much."); ECF No. 9-10 at 188, Tr. 883 ("He says on a day to day basis it really does not bother him that much."). The VE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

testified that, concerning the sole functional limitation Mr. King noted regarding his right shoulder, the number of jobs in the national economy would only negligibly decrease. As such, even assuming Mr. King's right shoulder injury was a severe impairment at step two, such error would be harmless as it is "inconsequential to the ultimate nondisability determination." *See Stout*, 454 F.3d at 1055.

**B. Rheumatoid Arthritis**

The ALJ found that "rheumatoid arthritis was not a severe impairment through the date of this decision." ECF No. 9-2 at 35, Tr. 34. As discussed above, the ALJ gave "no weight" to Dr. Eider's diagnosis. *Id.* Dr. Eider was the sole physician to diagnose Mr. King with rheumatoid arthritis and opine that such an impairment precluded employment. *See* ECF No. 9-10 at 184, Tr. 879.

Mr. King asserts that "[t]he evidence and opinion from Dr. Eider—not contradicted by any other source[,] physician or otherwise—supports a finding that indeed, Mr. King has the additional severe impairment of rheumatoid arthritis affecting Mr. King's wrists, hands, shoulders, and feet." ECF No. 14 at 9.

As discussed above, the ALJ did not commit reversible error in disregarding, and giving "no weight," to Dr. Eider's opinion. As Dr. Eider was the sole physician to diagnose disabling rheumatoid arthritis, the ALJ consequently did not err in finding that rheumatoid arthritis does not constitute a severe impairment at step two.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

### III.    Credibility Determination

Mr. King alleges that the ALJ found he lacked credibility without providing the requisite "clear and convincing" reasons. ECF No. 14 at 16–18. Specifically, Mr. King argues that the ALJ improperly considered activities of daily living. *Id.*

### A. Standard for Making Credibility Determination

The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the reviewing court to conclude the ALJ did not arbitrarily discredit a claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms.[1] *Reddick*, 157 F.3d at 722.

If the ALJ finds that a claimant's statements are not credible, he need not reject the entirety of a claimant's symptom testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may find the claimant's

---

[1] The Commissioner argues that the proper standard of review of an ALJ's credibility determination is "substantial evidence." ECF No. 15 at 17 n.7. However, as the Ninth Circuit is clear that the "clear and convincing reasons" standard governs, this Court is required to apply binding precedent. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. 2014).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *See id.* "[T]he ALJ's interpretation of [a claimant's] testimony may not be the only reasonable one . . . [b]ut [if] it is still a reasonable interpretation and . . . supported by substantial evidence . . . it is not our role to second-guess it." *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, an ALJ's failure to articulate specifically "clear and convincing" reasons for rejecting a claimant's subjective complaints is reversible error. *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007).

In addition to ordinary techniques of credibility evaluation, the ALJ may consider the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness; inconsistencies either in allegations of limitations or between statements and conduct; daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's alleged symptoms. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**B. Activities of Daily Living**

Although the "Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to . . . the workplace," activities of daily living may be considered "if a claimant is able to spend a substantial part of his day engaged in pursuits involving

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

the performance of physical functions that *are* transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original).

The ALJ considered Mr. King's activities of daily living while discussing the degree of limitation following Mr. King's back surgery. ECF No. 9-2 at 36, Tr. 35. The ALJ found that "[t]he evidence does not show that the claimant is less active since the back surgery." *Id.* The ALJ noted that Mr. King "prepared meals, shopped, and drove," "enjoys puzzles, playing cards, watching television, and music," and "did not report any problems dealing with people aside from the conflict he had with his boss over refusing to move a piano." *Id.* The ALJ concluded that Mr. King had a "mild restriction of activities of daily living" following June 2, 2013. *Id.*

Mr. King argues that the ALJ impermissibly considered his activities of daily living when discrediting Mr. King's testimony concerning the degree of limitation caused by his limitations. ECF No. 14 at 18.

The Court finds that the ALJ properly noted Mr. King's activities of daily living were inconsistent with the degree of limitation alleged. Although many of the noted activities, such as completing puzzles, do not transfer to a work environment, an ALJ can still utilize such activities to demonstrate an inconsistency between such activities and the degree of limitations as alleged by the claimant. *See Light*, 119 F.3d at 792. As the ALJ's decision was limited to a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

permissible consideration of activities of daily living, the Court finds that the ALJ

did not err when discussing the inconsistency.

**C. Other Credibility Factors**

Mr. King does not specifically challenge the remaining factors relied upon

by the ALJ to find Mr. King not fully credible. Instead, Mr. King generally asserts

that the ALJ failed "to provide clear and convincing reasons for rejecting

Mr. King's subjective complaints." ECF No. 14 at 17.

The ALJ based his credibility determination on Mr. King's failure to seek

treatment, *see* ECF No. 9-2 at 28, Tr. 27 ("However, the symptoms the claimant

was experiencing related to his back condition were apparently not serious enough

to prompt him to seek medical attention between November 24, 2010, and June

2012."), the minimal amount of pain medication taken by Mr. King following back

surgery, inconsistency between Mr. King's alleged pain and Mr. King's reports to

physicians following surgery, and inconsistency with the medical record. *See* ECF

No. 9-2 at 38, Tr. 37. As these are permissible factors for an ALJ to consider when

making a credibility determination, *see Light*, 119 F.3d at 792, the Court finds that

the ALJ did not commit reversible error when finding that Mr. King was not fully

credible concerning his degree of limitation.

**IV.    Disability Cessation Date**

The ALJ found that Mr. King's disability ceased on June 2, 2013. ECF

No. 9-2 at 37, Tr. 36. The ALJ based this finding on Mr. King's testimony "that the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 22

1    back surgery decreased his pain significantly" as well as "imaging [that] showed

2    the osseous contours of the central canal were now open at the L3-4 and L4-5

3    levels." *Id.* As such, the ALJ concluded that "[t]he medical improvement that has

4    occurred is related to the ability to work because there has been an increase in the

5    claimant's residual functional capacity." *Id.*

6        Mr. King argues that the ALJ improperly determined that Mr. King was able

7    to return to work following surgery without obtaining a corroborating medical

8    opinion. ECF No. 14 at 14–15. Mr. King asserts that the ALJ must "find medical

9    improvement in cessation cases, including cases in which a closed period of

10   disability has been established." *Id.* at 15.

11       The Commissioner contends that "[t]he ALJ determined Plaintiff's disability

12   ceased based on his medical records and testimony, which revealed significant

13   medical improvement related to his ability to do work, one month post-surgery."

14   ECF No. 15 at 14. Further, the Commissioner notes that "whether a claimant can

15   work is an administrative decision reserved to the Commissioner." *Id.* at 15 (citing

16   20 C.F.R. § 404.1527(d)).

17       The Commissioner cannot terminate benefits of persons determined to be

18   disabled until the Commissioner comes forth with evidence of medical

19   improvement. *See Lopez v. Heckler*, 725 F.2d 1489, 1496 (9th Cir. 1984), *vacated

20   by Heckler v. Lopez*, 469 U.S. 1082 (1984). However, Mr. King does not note any

21   decision finding that the Mr. King's testimony cannot constitute evidence of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 23

medical improvement. Further, in addition to noting the claimant's testimony, the ALJ cited imaging showing improvement following surgery. As the ALJ did, as required, cite evidence of medical improvement, the Court cannot find that the ALJ's decision was not supported by substantial evidence in the record absent authority demanding a physician's opinion.

Further, as above, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459. Mr. King has failed to demonstrate that the record was either ambiguous or inadequate, thereby failing to trigger the ALJ's duty to obtain further evidence.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

3.  The District Court Clerk is directed to enter Judgment dismissing the

Complaint and the claims therein with prejudice.

The District Court Clerk is directed to file this Order, enter Judgment as

directed above, provide copies to counsel, and **close this case**.

**DATED** this 4th day of April 2016.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge